UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of ) <br> *(Briefly describe the property to be searched* <br> *or identify the person by name and address)* ) <br> **A Black iPhone Currently Located at Drug** ) <br> **Enforcement Administration-Syracuse** ) <br> **Resident Office, as further described in** <br> **Attachment A** | Case No.   3:21-MJ- 49 (ML) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: *(identify the person or describe the property to be searched and its given location)*:

**A Black iPhone Currently Located at Drug Enforcement Administration-Syracuse Resident Office, as further described in Attachment A,**

located in the   **NORTHERN**   District of   **NEW YORK**   , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| **Title 21, United States Code, §§ 841(a)(1)** | **Possession with Intent to Distribute and Distribution of Controlled Substances** |
| **Title 18, United States Code, Section 924(c)(1)(A)** | **Possession of a Firearm in Furtherance of a Drug Trafficking Crime** |

The application is based on these facts:

**SEE ATTACHED AFFIDAVIT**

☒ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days): is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 2)*

*Applicant's signature*

Ryan M. Phelan, Special Agent, DEA

*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date: January 25, 2021

*Judge's signature*

City and State: Binghamton, NY    Hon. Miroslav Lovric, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE SEARCH OF
(1) A BLACK IPHONE CURRENTLY LOCATED AT
DRUG ENFORCEMENT ADMINISTRATION-SYRACUSE
RESIDENT OFFICE

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Ryan Phelan, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent employed by the United States Department of Justice, Drug Enforcement Administration ("DEA"), and as such I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code, Section 801, et. seq., and Title 18, United States Code, Section 2516. In May 2014, I was hired by the Drug Enforcement Administration (DEA) and was accepted to attend the DEA Basic Agent Training (BAT) Academy in Quantico, Virginia. I have been a Special Agent with the DEA since September 2014. Upon graduation from the DEA Academy, I have been assigned to the DEA Syracuse Resident Office. I am currently assigned to a DEA Task Force consisting of law enforcement agents from other federal, state, and local agencies.

2. I have participated in numerous successful investigations into illicit drug distribution networks and have interviewed defendants, informants and others who were sellers,

distributors, or users of narcotics and other illicit drugs. I have been involved in the monitoring, intercepting and recording of court ordered wiretaps. I have participated in numerous search warrants and arrest warrants involving narcotics trafficking. In addition to my above-mentioned experience, I have had the opportunity to speak with and observe other federal and state narcotics officers with regard to the manner in which narcotics are possessed, sold, and distributed in the Northern District of New York area. I have participated in numerous searches of residences, businesses, and vehicles in which controlled substances, drug paraphernalia, currency, and records were discovered. My experience as well as conversations with other law enforcement officers, as detailed herein, will serve as the basis for any opinions or conclusions set forth below.

3. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. The property to be searched, as more fully described in Attachment A, is one black iPhone (hereinafter, the "**DEVICE**"), seized from Mark MONGILLO and currently located at the Drug Enforcement Administration at 500 Plum Street, Syracuse, NY. The applied-for warrant would authorize the forensic examination of the **DEVICE** for the purpose of identifying electronically stored data particularly described in Attachment B.

**PREVIOUS APPLICATIONS**

6. On January 21, 2021, U.S. Magistrate Judge Miroslav Lovric signed a federal arrest warrant for Mark MONGILLO based on criminal complaint number 3:21-MJ-42 (ML). The complaint charges MONGILLO with possession with the intent to distribute of a controlled substance, to wit: 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A); and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A) (the "Subject Offenses").

7. The arrest warrant was executed on January 22, 2021, and MONGILLO appeared before Judge Lovric later that day for an initial appearance. Your affiant incorporates by reference, as if fully set forth herein, the affidavit submitted, and sworn to, in support of the arrest complaint for Mark MONGILLO dated January 21, 2021.

**PROBABLE CAUSE**

8. As is detailed in the affidavit submitted in support of the arrest warrant described above (and incorporated by reference set forth herein), on or about January 19, 2021, at approximately 9:10 p.m., officers with the Johnson City Police Department conducted a car stop of a 2021 Mazda 3 after it committed a traffic violation. The operator of the vehicle was later identified as Mark MONGILLO.

9. During the traffic stop, Officer-1 looked around the vehicle through the open driver's window and observed, among other things, what appeared to be a glass pipe inside of a plastic cup in the center console. At the same time, his fellow officer ("Officer-2") walked around the vehicle and looked through the windows, where he observed the same glass pipe, as well as a

lock box on the back passenger side floor of the vehicle. During the encounter, Officer-1 also noticed that MONGILLO had red glassy eyes and red blemishes on his face, which Officer-1 believed to be possible indicators of narcotic or stimulant use. Finally, Officer-1 also looked down in the driver's side of the vehicle, where he could see down into the driver's door pocket and observed a black Glock pistol in the door. Officer-1 notified Officer-2 of the presence of a gun using a hand signal.

10. Officer-1 then continued speaking with MONGILLO. MONGILLO ultimately admitted that he had a suspended driver's license. Thereafter, Officer-1 opened the driver's door and asked MONGILLO about the gun there. MONGILLO admitted that he was not supposed to have it and that it belonged to a friend. MOGILLO was subsequently placed under arrest. MONGILLO was mirandized and requested an attorney.

11. Once MONGILLO was handcuffed, Officer-2 secured the gun, which was loaded and had been defaced by having the serial numbers removed. While removing the gun, Officer-2 confirmed that the glass object in the center console appeared to a meth pipe and that there was a quantity of suspected methamphetamine in the bottom of the plastic cup.

12. At that time, the officers searched MONGILLO's vehicle. In addition to the meth pipe and suspected methamphetamine in the plastic cup, they found approximately $2,800 in cash in the sunglasses holder in front of the rearview mirror, and the **DEVICE,** which was plugged into the cell phone charging port of the vehicle, hanging down towards the driver's seat.

13. In the course of the search, Officer-1 unlocked the lock box in the back seat, using a small key on the set of keys in the vehicle. Inside, Officer-1 found three bags containing a large quantity of suspected methamphetamine; packaging materials; and a digital scale. The contents of the bags field tested positive for methamphetamine. The three bags weighed approximately 113.2

grams, 113.1 grams, and 403.5 grams.  Along with the approximately 12.1 grams of methamphetamine located in the cup in the center console, the total weight of methamphetamine was approximately 642 grams.

14. After MONGILLO was arrested and being processed at the Broome County Jail, a corrections officer performing a strip search discovered approximately $1,650 in cash taped to MONGILLO's groin.

15. The **DEVICE** is currently in storage at the DEA Syracuse office, located at 500 Plum Street, Syracuse, NY.  In my training and experience, I know that the **DEVICE** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the both Devices first came into the possession of the DEA.

## TECHNICAL TERMS

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and

playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

        b.      Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

        c.      Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

        d.      GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS

navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

      e.      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

      f.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17.     Based on my training, experience, and research, I know that the **DEVICE** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and portable computer with the capacity to access the Internet.  In my training and experience, I know that examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, as well as information regarding an individual's precise location and past travel, and directions to destinations inputted by the user.  Based on my training and experience, I also know that drug traffickers frequently use electronic devices such as the **DEVICE** to communicate with one another, to maintain contacts of drug customers and suppliers, and to maintain records of financial proceeds and transactions relating to drug trafficking.  I therefore believe that the **DEVICE** is likely to contain information about MONGILLO's sources of supply, customers, and/or other co-conspirators in his drug activity.  Moreover, the **DEVICE** may contain sent or received electronic messages, as well as sent or received text or email messages, which reflect information regarding the commission of the Subject Offenses, as well as other drug trafficking activity.

18.     Accordingly, a search of the data on the **DEVICE** would likely reveal information regarding locations frequented by MONGILLO in connection with narcotics trafficking activities, and would allow investigators to conduct surveillance of those locations in order to identify criminal associates of MONGILLO and the locations where narcotics, assets, and proceeds may be stored.  Moreover, the **DEVICE** may contain the times and dates that such locations were visited, which may provide information regarding MONGILLO's methods of transporting narcotics, and the times of such transportation.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed

along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **DEVICE** described in Attachment A to seek the items described in Attachment B.

ATTESTED TO BY THE AFFIANT

_____
RYAN M. PHELAN
Special Agent
Drug Enforcement Administration

I, the Honorable Miroslav Lovric, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by telephone on January 25, 2021, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
Hon. Miroslav Lovric
United States Magistrate Judge

## **ATTACHMENT A**

Description of Property to be Searched

- one black iPhone (the "**DEVICE**") seized from Mark MONGILLO on or about January 19, 2021, and currently located at the Drug Enforcement Administration in 500 Plum Street, Syracuse, NY

This warrant authorizes the forensic examination of the **DEVICE** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT "B"

1. All records on the **DEVICE** described in Attachment A that relate to violations of Title 21, United States Code, §§ 841(a)(1) (possession with intent to distribute and distribution of controlled substances) and Title 18, United States Code, Section 924(c)(1)(A) (possession of a firearm in furtherance of a drug trafficking crime) (the "Subject Offenses"), including:

    a. Any subscriber or contact information to include names, addresses, telephone numbers, email addresses, or other identifiers, as well as location information for the DEVICE;

    b. Log information of phone numbers or email addresses of missed calls, incoming and outgoing calls, messages, and/or other communications, and any information associated with those phone numbers or email addresses;

    c. Other caller-identification information, including names, phone numbers, and addresses;

    d. Address books or contact lists;

    e. Opened and unopened voice mail messages;

    f. Any SMS (simple message service) messages, data messages, text messages, MMS (Multimedia Messaging Service), email messages, chats, installed applications used to transmit any such messages or communications, and any other messages or communications, and any attachments to those messages, such as digital photographs and videos, and any associated information, such as the phone number from which the text message was sent stored on the Subject Devices;

    g. Text, photograph, audio, or video files stored on the DEVICES;

    h. Documents, spreadsheets, calendar, note, password, dictionary, database, or other scheduling information;

    i. Any Global Positioning Satellite (GPS) entries, Internet Protocol connections, and other location entries, to include Cell Tower and WiFi entries;

    j. Any locations, destinations, or addresses logged or otherwise stored on the DEVICE;

    k. Any internet or browser entries or history; and

    l. Any system data or configuration information contained within the DEVICE.

    m. All bank records and financial records; and

    n. All photographs, or video information relating to drug trafficking and/or unexplained wealth.

2. Evidence of user attribution showing who used or owned the **Device** at the time the tings described in this warrant were created, edited or deleted, such as logs, phonebooks, save usernames and passwords, documents and browsing history (to include internet activity, firewall logs, cashes, browser history and cookies, "bookmarked" or "favorite" web pages, search term that the user entered into any Internet search engine, and records of user-type web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.